# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Philip Bryce Griffith,            :
                  Appellant     :
                            :
            v.             :    No. 636 C.D. 2015
                            :    Submitted: October 9, 2015
Commonwealth of Pennsylvania,   :
Department of Transportation,    :
Bureau of Driver Licensing       :

BEFORE:   HONORABLE BERNARD L. McGINLEY, Judge
               HONORABLE ROBERT SIMPSON, Judge
               HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY JUDGE SIMPSON**               **FILED: November 18, 2015**

Philip Bryce Griffith (Licensee) appeals from an order of the Court of Common Pleas of Cambria County (trial court)[1] that denied his statutory appeal from a one-year suspension of his operating privilege pursuant to Section 1547(b)(1) of the Vehicle Code, commonly known as the Implied Consent Law.[2] The Department of Transportation, Bureau of Driver Licensing (PennDOT) suspended his operating privileges for refusing a blood test. Licensee contends the trial court abused its discretion by crediting the arresting officer's testimony. He also asserts the trial court erred in concluding he had a meaningful opportunity to comply with the statute. Discerning no error below, we affirm.

---

[1] The Honorable F. Joseph Leahey, Senior Judge, presiding.

[2] Section 1547(b)(1) requires any person placed under arrest for driving under the influence (DUI) "to submit to chemical testing … [and if that person] refuses to do so, the testing shall not be conducted but upon notice by the police officer, the department shall suspend the operating privilege of the person … for a period of 12 months." 75 Pa. C.S. §1547(b)(1)(i).

## I. Background

PennDOT notified Licensee of the one-year suspension of his operating privilege as a consequence of refusing to submit to chemical testing after his arrest for driving under the influence (DUI). Licensee timely appealed to the trial court.

The trial court held a *de novo* hearing at which Officer Eric Yackulich (Officer) of the Ferndale Borough Police Department testified on behalf of PennDOT as follows. Officer stopped Licensee after observing his vehicle speeding, crossing the center line of the road twice, and swerving between the center and fog lines. While stopped, Officer smelled intoxicant in the vehicle, and he noted Licensee's speech "was a little slurred." Reproduced Record (R.R.) at 76a. Licensee admitted he had a couple of drinks. Officer administered field sobriety testing to Licensee, which he failed. Officer then transported Licensee to the hospital for a blood test.

Officer testified he read the chemical test warnings on PennDOT Form DL-26[3] (Warning) to Licensee twice. The first time he read "[l]ine one through line four" to Licensee "[v]erbatim word for word." R.R. at 81a. "The second time actually following with my pen[,] allowing [Licensee] to follow with his eyes." Id. Although Licensee requested to read the Warning himself, Officer did not allow him to do so. Id. at 80a. When Officer asked Licensee if he would comply with chemical testing, Licensee responded "he was losing his license for 12 months so it didn't matter, he was refusing." Id.

---

[3] Form DL-26 "inform[s] a motorist that [he:] is under arrest; … is being requested to submit to a chemical test; … will lose [his] operating privileges and potentially face stricter criminal penalties if the request is refused; and[,] there is no right to remain silent or speak to an attorney." Grogg v. Dep't of Transp., Bureau of Driver Licensing, 79 A.3d 715, 717 (Pa. Cmwlth. 2013).

On cross-examination, Licensee's counsel questioned Officer about his testimony during the preliminary hearing before the magisterial district judge on the DUI charges. Specifically, he read portions of the preliminary hearing transcript (Preliminary Hearing Transcript) into the record, asking Officer to explain the discrepancy in his testimony. Officer explained he mistakenly testified at the preliminary hearing that Licensee did not ask to read the Warning himself; the mistake occurred because Officer was unable to consult his police report while testifying. Id. at 90a.

In rebuttal, Licensee testified he "[didn't] think [Officer] read me the warning. I think what happened was he summarized his interpretation of the consequences that were set forth in that document. He definitely did not read it to me a second time." Id. at 93a. Licensee testified that he advised Officer he did not understand the Warning, and so he wanted to read it himself. He explained because "[he was not] able to read it[,] I refused to sign it." Id. at 94a. When the trial court sought confirmation as to whether Licensee advised Officer he was going to lose his license for a year, Licensee conceded he said that to Officer. Id. at 95a.

Ultimately, based on the evidence presented at the hearing, the trial court denied Licensee's appeal. Licensee appealed to this Court.

In response to Licensee's concise statement of the errors complained of on appeal, the trial court issued an opinion pursuant to Pa. R.A.P. 1925(a). The

3

trial court credited Officer's testimony regarding his explanation of the Warning. Specifically, the trial court explained:

> Although [Licensee] attacks [Officer's] credibility, the trial court, as the sole finder of fact, considered [Officer's] explanation (regarding the discrepancy of whether [Licensee] asked to read the form) credible because he testified at the Preliminary Hearing without his report. See [Tr. Ct. Hr'g, Notes of Testimony, 3/16/15,] at 21. Additionally, [Licensee] did not provide a transcript from that hearing and thus, the trial court could not determine the context of the attacked testimony. Regardless, whether [Licensee] *asked* to read the warnings is irrelevant. Like the reasoning in McNulty [v. Department of Transportation, Bureau of Driver Licensing, 629 A.2d 278 (Pa. Cmwlth. 1993)] [Licensee] was not entitled to read the warnings to himself. Again, [Officer] met his duty by conveying the warnings to him. Ultimately, [Licensee] conceded that he knew the consequences of refusal. Therefore, the trial court properly found [Licensee] was fully aware of the required warnings.

Tr. Ct., Slip Op., 6/11/15, at 6-7 (underlined emphasis added). The trial court reasoned Officer did not need to ensure Licensee understood the Warning. Based on Officer's credited testimony and Licensee's concessions, the trial court concluded Licensee "received the warnings, understood the warnings, and refused chemical testing" in violation of the Implied Consent Law. Id. at 6.

When Licensee filed his reproduced record with this Court, he included a copy of the Preliminary Hearing Transcript. Although the Preliminary Hearing Transcript was available and Licensee's counsel consulted it during cross-examination, counsel did not attempt to admit the transcript into the record before the trial court. PennDOT filed a motion to strike the Preliminary Hearing Transcript from the reproduced record. After a telephonic argument, the

4

undersigned granted the motion, striking that portion of the reproduced record. The matter is now before us for disposition.

## II. Discussion

On appeal,[4] Licensee argues Officer did not afford Licensee a meaningful opportunity to submit to chemical testing. Primarily, he challenges the trial court's credibility determination as to Officer's testimony about the Warning. He also asserts Officer did not discharge his duty under the Implied Consent Law because he did not allow Licensee to read the Warning for himself, and he did not ensure Licensee understood the repercussions of refusal.

Initially, we note, the issue of whether a licensee refused chemical testing is one of law, based on the facts as found by the trial court. Tullo v. Dep't of Transp., Bureau of Driver Licensing, 837 A.2d 605 (Pa. Cmwlth. 2003). In addressing this issue, our courts consistently hold that anything less than an unqualified, unequivocal assent to submit to testing constitutes a refusal. Dep't of Transp., Bureau of Driver Licensing v. Renwick, 669 A.2d 934 (Pa. 1996).

To sustain a license suspension under the Implied Consent Law, PennDOT must establish a licensee: (1) was arrested for a violation of 75 Pa. C.S. §3802 (DUI) by a police officer with reasonable grounds to believe the licensee operated the vehicle while under the influence; (2) was asked to submit to a

---

[4] Our review is limited to determining whether the trial court committed error of law or abused its discretion, and whether necessary findings of fact were supported by competent evidence. Piasecki v. Dep't of Transp., Bureau of Driver Licensing, 6 A.3d 1067 (Pa. Cmwlth. 2010).

chemical test; (3) refused to do so; and, (4) was specifically warned a refusal would result in suspension of his driver's license. See Quigley v. Dep't of Transp., Bureau of Driver Licensing, 965 A.2d 349 (Pa. Cmwlth. 2009); Broadbelt v. Dep't of Transp., Bureau of Driver Licensing, 903 A.2d 636 (Pa. Cmwlth. 2006). In demonstrating whether a licensee refused chemical testing, PennDOT must prove the police officer offered the licensee a meaningful opportunity to comply with the Implied Consent Law. Broadbelt. If PennDOT satisfies this burden, the burden shifts to the licensee to prove his refusal was not knowing or conscious, or he was physically incapable of submitting to the test. Dep't of Transp., Bureau of Driver Licensing v. Ingram, 648 A.2d 285 (Pa. 1994); Dep't of Transp., Bureau of Traffic Safety v. O'Connell, 555 A.2d 873 (Pa. 1989); Broadbelt.

## A. Credibility

Licensee contends the trial court erred in crediting Officer's testimony. He asserts the inconsistencies between his testimony at the *de novo* hearing and his testimony at the preliminary hearing constitute grounds to reject Officer's testimony in its entirety.

Determinations as to the credibility of witnesses and the weight assigned to their testimony are solely within the province of the fact-finder. Millili v. Dep't of Transp., Bureau of Driver Licensing, 745 A.2d 111 (Pa. Cmwlth. 2000). "As fact-finder, the trial court may accept or reject the testimony of any witness in whole or in part." Reinhart v. Dep't of Transp., Bureau of Driver Licensing, 954 A.2d 761, 765 (Pa. Cmwlth. 2008) (citation omitted). "Because questions of credibility are for the trial court to resolve, and not this Court, we may

6

not reverse the trial court's order on the ground that it erroneously accepted and relied upon the testimony of [Officer]." McGee v. Dep't of Transp., Bureau of Driver Licensing, 803 A.2d 255, 258-59 (Pa. Cmwlth. 2002); see also Sitoski v. Dep't of Transp., Bureau of Driver Licensing, 11 A.3d 12 (Pa. Cmwlth. 2010).

Here, at the *de novo* hearing, Licensee attempted to discredit Officer. To that end, Licensee's counsel read portions of the Preliminary Hearing Transcript into the trial court record to show inconsistencies in Officer's testimony.[5] Specifically, Officer testified at the preliminary hearing that Licensee did not ask to read the Warning, which was contrary to his testimony at the *de novo* hearing. However, Officer addressed this discrepancy on cross-examination, and the trial court credited Officer's explanation. Accordingly, Licensee's attempts to impeach with a prior inconsistent statement were unsuccessful.

In fact, the trial court resolved all conflicts in testimony against Licensee. The trial court explicitly credited Officer's testimony and explained why it rejected Licensee's testimony. The trial court characterized Licensee's testimony regarding the alleged inadequacy of the warnings as "self-serving." Tr. Ct., Slip Op. at 6.

---

[5] Because the Preliminary Hearing Transcript is stricken, and was not part of the evidentiary record before the trial court, we do not consider it. Millili v. Dep't of Transp., Bureau of Driver Licensing, 745 A.2d 111 (Pa. Cmwlth. 2000). However, we may consider those parts of the Preliminary Hearing Transcript that were read into the trial court record. Id.

Licensee essentially asks this Court to reweigh the evidence. However, we cannot do so. Gammer v. Dep't of Transp., Bureau of Driver Licensing, 995 A.2d 380 (Pa. Cmwlth. 2010).

We discern no abuse of discretion in the trial court's decision to credit Officer's testimony over that of Licensee. "Thus, we must determine the issue of whether [Licensee] refused chemical testing 'under the facts found by the trial court [and] not under the testimony [Licensee] prefers.'" Reinhart, 954 A.2d at 765-66 (quoting McDonald v. Dep't of Transp., Bureau of Driver Licensing, 708 A.2d 154, 156 (Pa. Cmwlth. 1998)).

**B. Comprehension**

Licensee also asserts he did not have a meaningful opportunity to comply with the chemical testing. He claims he did not fully understand the consequences of refusal because he did not have the opportunity to read the Warning himself. Licensee also contends the Officer had a duty to ensure Licensee comprehended the Warning. These arguments lack merit.

Officer's sole duty was to inform Licensee of the consequences of refusing to submit to a chemical test. Broadbelt. Our Supreme Court holds the warnings set forth on PennDOT's DL-26 Form meet the requirements of the Implied Consent Law. Dep't of Transp., Bureau of Driver Licensing v. Weaver, 912 A.2d 259 (Pa. 2006). According to the facts found by the trial court, Officer read the Warning to Licensee twice. See Tr. Ct., Slip Op. at 6. Thus, Officer discharged his statutory duty. Weaver.

8

Further, Officer had no duty to ensure Licensee understood the consequences of refusal. McKenna v. Dep't of Transp., Bureau of Driver Licensing, 72 A.3d 294 (Pa. Cmwlth. 2013); Broadbelt; Martinovic v. Dep't of Transp., Bureau of Driver Licensing, 881 A.2d 30 (Pa. Cmwlth. 2005). This Court holds "confusion over issues other than Miranda[6] rights does not negate a refusal based upon that confusion" because "[i]t is impractical to require officers to explain every conceivable point which may confuse a motorist …." McNulty v. Dep't of Transp., Bureau of Driver Licensing, 629 A.2d 278, 282 (Pa. Cmwlth. 1993) (reasoning officer was not required to allow licensee to read statute before refusing chemical testing).

Essentially, Licensee argues his refusal was reasonable because he was not permitted to read the Warning himself. Licensee cites no requirement in statute or case law that an officer is required to permit a licensee to read the Warning before executing a knowing refusal. In fact, Licensee concedes that under McNulty, he was not entitled to read the Warning himself. See Appellant's Br. at 19.

In McNulty, the licensee argued he had a right to read a cited section of the Vehicle Code prior to submitting to a blood test. There, the licensee asked to read the section in order to clarify his confusion. Similar to Licensee's argument here, he asserted "unless the police attempt[ed] to clarify his confusion, any refusal to submit to the chemical test is vitiated." Id. at 281. We disagreed, reasoning an officer does not have an obligation to ensure a licensee's

---

[6] Miranda v. Arizona, 384 U.S. 436 (1966).

comprehension of the consequences of refusal when issuing the warning. <u>Id.</u> We explained a licensee's confusion does not excuse his refusal to submit to chemical testing.

Applying <u>McNulty</u> here, Officer was not required to allow Licensee to read the Warning for himself as a prerequisite for consenting to chemical testing. Officer's reading of the Warning sufficed.

Nevertheless, accepting for sake of argument Licensee's testimony that Officer summarized rather than read the Warning, it would not alter the result here.

There is no statutory requirement that an officer's warning contain any specific wording. This Court holds that paraphrasing of the Warning may suffice. <u>See</u> <u>Podgurski v. Dep't of Transp., Bureau of Driver Licensing</u>, 654 A.2d 232 (Pa. Cmwlth. 1995) (where officer paraphrased language on DL–26 Form, informing licensee her driver's license would be suspended if she refused testing, but did not state suspension would be for a year, warning was adequate); <u>see</u> <u>also</u> <u>Kennedy v. Dep't of Transp., Bureau of Driver Licensing</u> (Pa. Cmwlth., No. 2308 C.D. 2012, filed May 24, 2013) (unreported), 2013 WL 3156635, at *3 (citing <u>Podgurski</u>). Our Supreme Court affirmed this Court's holding that a warning is legally sufficient if it informs the licensee that refusing a request for chemical testing means that he "will be in violation of the law and will be penalized for that violation." <u>Weaver</u>, 912 A.2d at 261 (citing <u>Weaver v. Dep't of Transp., Bureau of Driver Licensing</u>, 873 A.2d 1, 3 (Pa. Cmwlth. 2005)).

Here, Licensee conceded Officer summarized the consequences of refusal. Licensee also confirmed Officer advised that refusal may result in a 12-month suspension. R.R. at 95a. Thus, Licensee was aware of the consequences of refusal at the time he refused chemical testing. That is all the law requires. Weaver. As a result, the trial court did not err in finding Officer's warning adequate to advise Licensee of the consequences of refusal. Id.; Broadbelt.

Based on the credited evidence, PennDOT met its *prima facie* burden. Licensee did not establish that he was not capable of making a knowing refusal. Therefore, the suspension was proper.

### III. Conclusion

For the foregoing reasons, we affirm the order of the trial court.

ROBERT SIMPSON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Philip Bryce Griffith,                                  :
                              Appellant        :
                                               :
                v.                             :        No. 636 C.D. 2015
                                               :
Commonwealth of Pennsylvania,                  :
Department of Transportation,                  :
Bureau of Driver Licensing                     :

# **O R D E R**

**AND NOW**, this 18th day of November, 2015, the order of the Court of Common Pleas of Cambria County is **AFFIRMED**.

_____
ROBERT SIMPSON, Judge