611 A.2d 681

COMMONWEALTH of Pennsylvania, Appellee,

v.

William EISENHART, Appellant.

Supreme Court of Pennsylvania.

Submitted May 6, 1991.

Decided June 2, 1992.

John G. Bergdoll, York, for appellant.

Gerald A. Lord, Dep. Prosecutor, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION

NIX, Chief Justice.

Appellant, William Eisenhart, was convicted of one count each of Driving Under the Influence of Alcohol, 75 Pa.C.S. § 3731(a)(1), hereinafter referred to as "DUI", and driving while his blood-alcohol level exceeded the statutory limit, 75

Pa.C.S. § 3731(a)(4).[1]  His appeal to this Court concerns the interpretation of provisions of the Implied Consent Law, 75 Pa.C.S. § 1547, which provide that one who operates a motor vehicle in Pennsylvania is deemed to have consented to testing or bodily fluids for the purpose of determining the presence of a controlled substance.  The pertinent facts follow.

On April 24, 1987, appellant's vehicle crashed into the cement wall of a residence located outside of Manchester, Pennsylvania.  Officer Ronald Dull arrived at the accident scene to find appellant standing next to his car, dazed and dizzy.  Officer Dull observed that appellant's pupils were dilated and that he experienced difficulty in maintaining his balance.  In response to a request for his driver's license, appellant produced a Social Security card.  Additionally, Officer Dull noticed a case of beer on appellant's car seat and an open can of beer spilling on the floor of the driver's side of the car.  After two field sobriety tests, which appellant failed, the officer placed appellant under arrest.

Appellant alternately agreed and refused to submit to a blood test, and he was then transported by police car to the hospital.  At the hospital, he refused to consent to a blood alcohol test..  On the advice of the District Attorney of York County, hospital personnel conducted a test of appellant's blood which showed an alcohol level of .293%.

Prior to trial, appellant sought to suppress the results of the test.  That motion was denied by the trial court, and appellant was convicted by a jury of the two offenses.

The Superior Court rejected appellant's contention that the administration of the blood test violated his rights under the Implied Consent provision and that the introduction of the

1.  § 3731.  Driving under influence of alcohol or controlled substance
    (a) Offense defined.—A person shall not drive, operate or be in actual physical control of the movement of any vehicle while:
        (1) under the influence of alcohol to a degree which renders the person incapable of safe driving;
        *    *    *    *    *    *
        (4) [or] the amount of alcohol by weight in the blood of the person is 0.10% or greater.

results at trial was improper. *See,* 75 Pa.C.S. § 1547 (Implied Consent).

The Superior Court, 402 Pa.Super. 653, 578 A.2d 36, determined, after carefully reviewing the record, that appellant consented to the blood test at first, but then he refused at the hospital, and that in any event, he impliedly consented under Section 1547(a). The Superior Court also rejected appellant's argument that the Commonwealth's failure to obtain a warrant renders unconstitutional the use of the *results* of the blood test. This appeal followed.

The issue before this Court is whether the appellant has the right to refuse to submit to blood alcohol testing under the Motor Vehicle Code. If there is such a right, we must determine whether blood test results acquired in contravention of that asserted right should be suppressed. For the reasons that follow, we hold that there is an absolute right to refuse, and that the blood test results acquired in contravention of that right must be suppressed.[2]

Appellant argues that once the operator of a vehicle refuses to submit to a blood test, the Implied Consent provision of the Motor Vehicle Code, 75 Pa.C.S. § 1547, prohibits the testing of blood for alcohol level and the subsequent evidentiary use of such test results. Appellant argues that to the extent that the provision is interpreted not to include such a requirement, the provision violates the United States and Pennsylvania Constitutions.

The Commonwealth argues that the testing of the blood in this case satisfied both statutory and constitutional requirements. The Commonwealth contends that the officer complied with the requirements which permit blood to be tested upon a showing of probable cause. Second, the Commonwealth argues that the police officers validly obtained the test results from a search incident to a lawful arrest and/or under exigent circumstances.

2. This holding in no way alters or affects the sanction of losing one's driver's license for twelve months for refusing to consent to chemical testing. *See* 75 Pa.C.S. § 1547(b)(1).

The testing of blood for the presence of a controlled substance is governed by the Motor Vehicle Code. The Implied Consent provision of the Motor Vehicle Code, 75 Pa.C.S. § 1547, provides the following standards for the withdrawal of blood:

§ 1547—Chemical testing to determine amount of alcohol or controlled substance.

(a) General rule.—Any person who drives, operates or is in actual physical control of the movement of a motor vehicle in this Commonwealth shall be deemed to have given consent to one or more chemical tests of breath, blood or urine for the purpose of determining the alcoholic content of blood or the presence of a controlled substance if a police officer has reasonable grounds to believe the person to have been driving, operating or in actual physical control of the movement of a motor vehicle:

(1) while under the influence of alcohol or a controlled substance or both; or

(2) which was involved in an accident in which the operator or passenger of any vehicle involved or a pedestrian required treatment at a medical facility or was killed.

(b) Suspension for refusal.—

(1) *If any person* placed under arrest for a violation of Section 3731 (relating to driving under influence of alcohol or controlled substance) *is requested to submit to a chemical testing and refuses to do so, the testing shall not be conducted* but upon notice by the police officer, the department shall suspend the operating privilege of the person for a period of 12 months.

(2) It shall be the duty of the police officer to *inform the person that the person's operating privilege will be suspended upon refusal to submit to chemical testing.*

(3) Any person whose operating privilege is suspended under the provisions of this section shall have the same right to appeal as provided for in cases of suspension for other reasons.

(c) Test results admissible in evidence.—In any summary proceeding or criminal proceeding in which the defendant is

charged with a violation of section 3731 or any other violation of this title arising out of the same action, the amount of alcohol or controlled substance in the defendant's blood, as shown by chemical testing of the person's breath, blood or urine, which tests were conducted by qualified persons using approved equipment, shall be admissible in evidence.

75 Pa.C.S. § 1547 (emphasis added).

Appellant's initial argument is that his blood was extracted in violation of the Implied Consent Law. He argues that his refusal is expressly provided for in the Motor Vehicle Code and therefore should have been acknowledged and honored, and the blood test not administered. We agree with Appellant.

The trial court denied Appellant's pre-trial motions to suppress the blood test [3] and his post-trial motions to grant a new trial because of the admission of the blood test results.[4] The Superior Court affirmed the trial court's denial of Appellant's motion to suppress the results of his blood test. In doing so, the Superior Court held that "(1) even though Appellant refused the test after he was taken to the hospital he initially consented to it, and (2) under [Section] 1547(a) [of Title 75] appellant impliedly consented." *Commonwealth v. Eisenhart,* slip op. at 5 (1990) [402 Pa.Super. 653, 578 A.2d 36 (table) ].

The Superior Court erred in both holdings. Nowhere does the Motor Vehicle Code prevent a driver from changing his mind to revoke his implied consent. The statute clearly states that "if a person ... is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted...." 75 Pa.C.S. § 1547(b). Because his consent is implied until the person actually refuses, under subsection (a) of Section 1547, his actual consent would be no different from his

3. This unpublished opinion can be found at *Commonwealth v. Eisenhart,* 1227 C.A.1987, slip op. at P. 2 (Pa. Court of Common Pleas, York County, October 14, 1987).

4. This unpublished opinion can be found at *Commonwealth v. Eisenhart,* 1227 C.A.1987, slip op. at p. 2 (Pa. Court of Common Pleas, York County, May 11, 1989).

remaining silent. Thus, under the Implied Consent provision, Section 1547(a), testing is allowed absent an affirmative showing of the subject's refusal to consent to the test at the time that the testing is administered. Moreover, his initial consent does not preclude him from revoking his consent to the test. The statute grants an explicit right to a driver who is under arrest for driving under the influence to refuse to consent to chemical testing. The relationship between the Implied Consent provision of Section 1547(a) and the suspension for refusal under Section 1547(b) is such that a driver may revoke his Implied Consent under Subsection (a) by refusing. The sanction of the one year suspension for refusing to consent to the chemical testing is used as an incentive to induce a driver to submit to the test, provided the probable cause requirements of subsection (a) are met. The issue of an unconscious driver or a driver whose blood is removed for medical purposes is not before us today, but is currently pending before this Court in another matter. *Commonwealth v. Danforth*, 395 Pa.Super. 1, 576 A.2d 1013, *appeal granted*, 526 Pa. 647, 585 A.2d 467 (1990); *Commonwealth v. Kohl*, 395 Pa.Super. 73, 576 A.2d 1049, *appeal granted*, 526 Pa. 630, 584 A.2d 313 (1990).[5] However, the conscious driver has the right under 1547(b) to revoke that consent and once that is done, "the testing shall not be conducted." 75 Pa.C.S. 1547(b).[6]

█ Having determined that the testing was unlawful, we must address whether suppression of the evidence is the appropriate relief. In *Commonwealth v. Tarbert*, 517 Pa. 277, 535 A.2d 1035 (1987), we upheld the suppression of evidence resulting from a blood alcohol test performed upon a driver

5. The Superior Court characterized the blood test as one taken for medical purposes. However, the Commonwealth in its brief concedes that the Hospital took the blood sample after consulting with the District Attorney. No argument can be sustained that the District Attorney should play any part in the medical decisions facing the staff of the Hospital for the treatment of an accident victim. It is clear to us that the staff member who withdrew the blood from appellant was operating at the request of, and therefore as an agent for, the Commonwealth.

6. Having granted the Appellant's relief based upon statutory grounds, we need not nor will we address his constitutional claims.

unlawfully stopped at a police roadblock. In *Tarbert,* we held that the roadblock did not violate the United States or the Pennsylvania Constitutions. The roadblock did, however, violate an implicit prohibition of such roadblocks in the Motor Vehicle Code, and as a result we ordered that suppression was the appropriate remedy for the fruit of that unlawful but not unconstitutional search. *Id.* As we stated in *Tarbert:*

> "The illegality arises in those instances because the exercise of the police powers therein exceeded the statutory parameters then in force. It is therefore the restraint upon the police power imposed by the General Assembly that requires our rejection of the procedures employed . . . without a consideration of the constitutionality of that conduct. Since in each instance the [evidence] was the fruit of an unlawful seizure, the results of that test were properly suppressed in the ensuing criminal prosecutions."

517 Pa. at 297, 535 A.2d at 1045. Consistent with that holding, we must now order suppression of the blood test because it was taken unlawfully.

In the past, the courts of this state have upheld the admission of the results of blood tests in criminal proceedings without the affirmative consent of the driver of the automobile. *See, Commonwealth v. Leib,* 403 Pa.Super. 223, 588 A.2d 922 (1991) (upholding the admission of blood test results in conviction for "DUI" where driver consented to the test) *appeal denied,* 528 Pa. 642, 600 A.2d 194 (1991); *Commonwealth v. Hipp,* 380 Pa.Super. 345, 551 A.2d 1086 (1988) (affirming conviction for "DUI" where hospital withdrew blood for medical purposes and the defendant objected after the blood was drawn); *Commonwealth v. Wege,* 368 Pa.Super. 181, 533 A.2d 776 (1987) (conviction upheld where driver consented to breathalyzer test after twice refusing to submit to such a test) *appeal denied,* 519 Pa. 665, 548 A.2d 255 (1988). Each of these decisions is distinguishable from the case at bar because here there was no legitimate medical purposes for drawing the blood, and there was an express refusal by the defendant to submit to testing. Only one other case involves the express refusal of a driver to submit to chemical testing which was

subsequently performed and that case is currently before this Court. *See Commonwealth v. Molino,* 406 Pa.Super. 66, 593 A.2d 872, (1991), *appeal granted,* 529 Pa. 618, 600 A.2d 535 (1991).

■ Our examination of the effect of improperly admitted evidence on the defendant's trial comprises the following standards:

> [E]vidence improperly admitted can be treated as harmless on any of the three grounds, namely, [1] that the evidence of guilt, without regard to the tainted evidence, is so over-whelming that conviction would have followed beyond a reasonable doubt without regard to it, [2] that the tainted evidence was merely cumulative of other proper persuasive evidence on the issue for which it is offered, or [3] that it was so slight or tangential in its effect that its influence on the jury can be determined to be *de minimus.*

*Commonwealth v. Norris,* 498 Pa. 308, 317, 446 A.2d 246, 250 (1982) (*citing Commonwealth v. Story,* 476 Pa. 391, 383 A.2d 155 (1978)).

We hold that the blood alcohol test results had greater than a *de minimus* effect on the jury, that the results were not merely cumulative, and that it is not beyond a reasonable doubt that the other evidence presented was so overwhelming to erase any doubt of a conviction. In light of the defense that the effect of the trauma of the accident could be mistaken for the effects of the influence of alcohol, we hold that the admission of the blood test results refuted that defense, and thus played a key role in the Commonwealth's prosecution.[7] Therefore, the Appellant's conviction for driving under the influence of alcohol is reversed and the judgment of sentence is vacated, and the defendant is granted a new trial. In addition, because the Commonwealth needed the blood test

7. This is consistent with our holding in *Commonwealth v. Norris,* 498 Pa. 308, 317, 446 A.2d 246, 251 (1982), when the admission of an unlawfully seized gun was improper but harmless in the defendant's conviction for rape, statutory rape, kidnapping, and corruption of a minor, because the victim testified that she had been threatened with a knife and a different gun from the one admitted. Therefore, the conviction did not rely on the admission of the gun. *Id.*

results to prove a violation of Section 3731(a)(4), driving while blood alcohol level exceeded .10% of volume, Appellant's conviction for that offense is also reversed, the judgment of sentence is vacated and Appellant is granted a new trial.[8]

FLAHERTY, J., files a concurring opinion in which PAPADAKOS and CAPPY, JJ. join.

FLAHERTY, Justice, concurring.

I agree with the reasoning and conclusion of the majority, but cannot join the opinion of the court due to its mistaken reference to our holding in *Commonwealth v. Tarbert*, 517 Pa. 277, 535 A.2d 1035 (1987). The holding of *Tarbert* was that when a roadblock was conducted in violation of a statute, the resultant illegal breathalyzer evidence must be suppressed. That holding is authoritative precedent for suppression of evidence in this case, where a blood sample was extracted in violation of a statute.

The majority in this case, however, makes the incorrect statement that *Tarbert:*

> held that *the roadblock did not violate the United States or the Pennsylvania Constitutions.* The roadblock did, however, violate an implicit prohibition of such roadblocks in the Motor Vehicle Code, and as a result we ordered that suppression was the appropriate remedy for the fruit of that unlawful *but not unconstitutional* search.

(Emphasis added.) The emphasized language is a misstatement of the law. The court in *Tarbert* held no such thing. Only two justices joined an opinion gratuitously expressing the emphasized proposition, which was an entirely unnecessary and unwarranted excursion into constitutional analysis when statutory construction rendered the constitutional issue moot. As Mr. Justice Papadakos wrote: "We have too often stated

---

**8.** It may be that the Commonwealth cannot prove a violation of Section 3731(a)(4) without a blood alcohol test. Nonetheless, the police officer's and the hospital staff's observations of defendant's actions, and the defendant's own testimony, if he chooses to testify, may provide the evidence for a conviction under Section 3731(a)(1). Therefore, this holding in no way hampers the prosecution of the offense of Driving Under the Influence of Alcohol.

that when a case raises constitutional and non-constitutional issues, we should not reach constitutional issues if the case can properly be decided on non-constitutional grounds. Because of the inclusion of this obiter dictum, I am constrained to concur in the result." *Tarbert,* 517 Pa. at 301–02, 535 A.2d at 1047 (Papadakos, J., concurring; citations omitted).

Due to the misstatement in the majority opinion as to the holding of *Tarbert,* I cannot join the opinion though I concur in the result.

Mr. Justice PAPADAKOS and Mr. Justice CAPPY join this concurring opinion.